IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KATHERINE KOCHANEK, on behalf                                              PLAINTIFF
of herself and all others similarly situated

v.                              CASE NO. 4:16-CV-00324 BSM

AETNA LIFE INSURANCE CO. and
HOME DEPOT U.S.A., INC.                                                    DEFENDANTS

# ORDER

Plaintiff Katherine Kochanek appeals the termination of her short-term disability ("STD") benefits under the Employee Retirement Income Security Act ("ERISA"). Defendant Aetna Life Insurance Company's ("Aetna") decision to terminate Kochanek's benefits is affirmed, judgment is entered for Aetna and defendant Home Depot U.S.A., Inc. ("Home Depot"), and this case is dismissed with prejudice.[1]

## I. BACKGROUND

Katherine Kochanek is a former employee of Home Depot who received insurance coverage through the Home Depot Welfare Benefits Plan. Administrative Record ("AR") at 69, 81, 83, 85, 384–91, 501, 737–39, 747, Doc. No. 17. The plan includes STD benefits insured through Aetna under a group policy issued to Home Depot. *See id.* It defines the eligibility requirements for STD benefits and designates Aetna to serve as the claims administrator. *Id.* at 89, 385–86, 501. This means that Aetna has the sole authority to

---

[1] This case was fully briefed and submitted for a decision on September 13, 2016. It did not, however, appear on my internal docketing system as ripe for a decision, and I am therefore very late in reviewing the record and entering this order. I apologize to the parties for this delay.

determine whether and to what extent an insured is entitled to receive STD benefits. *See id.* at 79, 391, 471, 499, 501. The plan permits Aetna to interpret its terms and decide all claims and appeals, and it confers broad discretion on Aetna in making all of these determinations. *Id.* at 79, 391, 471, 499.

The plan defines a "disability" as an illness, injury, or pregnancy-related condition that precludes an individual from performing the material duties of her job. *Id.* at 89. An individual is not performing the material duties of her job if (1) she is only performing some of the material duties of her job; and (2) her income is 80% or less of her predisability earnings solely because of an illness, injury, or a disabling pregnancy-related condition. *Id.* The plan defines "illness" as a "[a] pathological condition of the body that presents a group of clinical signs and symptoms and laboratory findings peculiar to it and that sets the condition apart as an abnormal entity differing from other normal or pathological body states." *Id.*

Kochanek applied for STD benefits on April 29, 2014, *id.* at 517, because she was being treated for splenomegaly, an abnormal enlargement of the spleen, and for Epstein-Barr virus ("EBV"). *Id.* at 727–28. Kochanek provided authorization to Aetna to obtain her medical information so that it could evaluate her claim. *Id.* at 530–31. Aetna requested that her primary care physician, Dr. Derek Bryant, complete a statement concerning Kochanek's health and send supporting records and other medical documentation. *Id.* at 525–35, 537–41. Dr. Bryant sent Aetna a statement indicating that Kochanek had splenomegaly and

2

EBV; that Kochanek reported abdominal swelling, fever, and fatigue beginning around January 30, 2014; and that she had "[n]o ability to work" between April 24, 2014, to July 1, 2014. *Id.* at 727–28. Dr. Bryant, however, did not submit any supporting medical records or physical examination findings—he simply stated that Kochanek was awaiting an appointment with a gastroenterologist. *Id.*

At this point, Aetna suspended its claims investigation and informed Kochanek that Dr. Bryant's statement was insufficient to support her claim. *Id.* at 542. It advised her that it would need medical notes with objective physical examination findings that demonstrate that Kochanek would be unable to perform core elements of her job. *Id.* On May 20, 2014, Dr. Bryant sent the following medical documentation to Aetna: (1) a CT scan from February 28, 2014, showing "[m]ild fatty infiltration of the liver and mild splenomegaly," (2) an Anti-Nuclear ABS test, which detected elevated EBV levels, (3) records from a visit on April 7, 2014, in which Kochanek complained about an enlarged spleen, EBV, diabetes, fatigue, stomach pain, diarrhea, and general pain; and (4) records from a visit on April 24, 2014, in which Kochanek complained about heart palpitations, nausea, bloating, stomach acid, EBV, and generally feeling unwell. *Id.* at 706–08, 712–13, 714–19. It appears that Dr. Byrant referred Kochanek to a gastroenterologist, Dr. Angelo Coppola, and prescribed Valtrex, Carafate, Prilosec, and Zantac. *Id.* at 706.

After reviewing these records, Aetna's staff recommended denying Kochanek's claim after finding that "the medical data received does not support a functional impairment. We

3

did not find specific physical examination findings which would preclude the associate from performing the core elements of her own job." *Id.* at 628, 769. Aetna, however, ultimately approved the claim through June 5, 2014, following a consultation with Dr. Coppola and further review of Kochanek's job requirements. *Id.* at 773–75. It informed Kochanek that her benefits would not be extended past June 5, 2014, without additional medical information supporting her claim. *Id.* at 543.

Aetna then sought additional documentation from Dr. Bryant, who forwarded a report from Dr. Coppola dated June 5, 2014, concerning an esophagogastroduodenoscopy procedure. *Id.* at 702. Dr. Coppola found that Kochanek had antral gastritis, which he treated with increased doses of previously prescribed proton pump inhibitor drugs. *Id.* Based on this report, Dr. Bryant reported that Kochanek would not be able to return to work until August 1, 2014, because of nausea and weakness. *Id.* at 703. When asked about specific restrictions, Dr. Bryant responded that he was waiting for further results, but he did not identify any specific limitations on Kochanek's daily activities. *Id.* Kochanek also reported that she had appointments with her doctors on June 9, 2014, and July 2, 2014, for a repeat CT scan and a colonoscopy. *Id.* at 609.

On June 13, 2014, Aetna decided to continue paying STD benefits to Kochanek through July 6, 2014, but it informed her that continued benefits past that date were contingent on the submission of objective evidence supporting her disability claim. *Id.* at 552. Because Kochanek was still waiting for the results of diagnostic testing, it again agreed

to continue her benefits until August 4, 2014. *Id.* at 574.

On August 19, 2014, Aetna denied Kochanek's claim for benefits, effective August 5, 2014. *Id.* at 583. It did so after receiving documentation from Drs. Bryant and Coppola which, according to Aetna, failed to support her disability claim past August 5, 2014. *Id.* at 673–89. In particular, Dr. Coppola released Kochanek to return to work as early as July 3, 2014, and reported that she was able to perform "[h]eavy work activity" without restrictions or limitations. *Id.* at 675, 687. Although Dr. Bryant submitted a contrary opinion, he was unable to identify any specific restrictions or limitations that would prevent Kochanek from returning to work. *Id.* at 689. Further, he did not send any medical documentation supporting his opinion. *Id.*

Kochanek appealed Aetna's denial of her STD benefits through its internal appeals process. *Id.* at 585. Aetna referred her file to Dr. Edward Klotz, an internal medicine physician, for review. *See id.* at 836. Dr. Klotz found no functional impairment and concluded that Kochanek was not disabled. *Id.* at 651–52. Following a conversation with Dr. Bryant, who reported that there were no objective findings supporting his opinion and the he did not know whether Kochanek's conditions affected her daily living activities, Klotz reaffirmed his conclusion. *Id.* at 640–41. It appears that Aetna denied Kochanek's appeal on this basis. Kochanek then filed this lawsuit, pursuant to 29 U.S.C. section 1132(a)(1)(B), to reinstate her benefits. Class Action Compl. ¶¶ 6–8, Doc. No. 2.

5

## II. DISCUSSION

### A. Standard of Review

The parties dispute the applicable standard of review. When an ERISA benefits plan gives an administrator "discretionary authority to determine eligibility for benefits," the administrator's decision is reviewed for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, various plan documents indisputably confer broad discretionary authority on Aetna to determine whether and to what extent claimants are entitled to STD benefits. *See, e.g.*, AR at 79, 471, 499. Accordingly, an abuse of discretion standard governs this appeal.

Kochanek's arguments for *de novo* review are unpersuasive. First, she argues that *de novo* review is appropriate because Aetna lacks authority under the plan to make coverage decisions on behalf of Home Depot. Therefore, she concludes that its decision to terminate Kochanek's STD benefits does not warrant any deference. This argument, however, is squarely contradicted by a number of plan documents that plainly confer discretionary authority on Aetna to determine whether a claimant is eligible for benefits under the Plan and to interpret its terms. *See id.* Indeed, the plan explicitly designates Aetna as the claims administrator. *Id.* at 501.

Second, Kochanek argues that Arkansas Department of Insurance Rule 101 bars the enforcement of discretionary clauses in insurance contracts. In the absence of a discretionary clause, an ERISA benefits appeal is reviewed *de novo*. Several states, including Arkansas,

prohibit the enforcement of discretionary clauses in insurance contracts. *See Davis v. Unum Life Insurance Company of America*, No. 4:14-CV-00640 KGB, 2016 WL 1118258, at *3 (E.D. Ark. March 22, 2016). Rule 101 states in part that "[n]o policy, contract, certificate or agreement offered or issued in this State providing for disability income protection coverage may contain a provision purporting to reserve discretion to the insurer to interpret the terms of the contract." Ark. Admin. Code 054.00.101-4.

Critically, Rule 101 applies only to policies issued or renewed within the state of Arkansas on or after March 1, 2013. *Owens v. Liberty Life Assurance Co. of Boston*, 184 F. Supp. 3d 580, 584 (W.D. Ky. 2016). Here, the policy was issued by Aetna, a Connecticut insurer, AR at 65, to Home Depot, a Delaware corporation headquartered in Georgia. *Tikkanen v. Liberty Life Assurance Co. of Boston*, 31 F. Supp. 3d 913, 916 (E.D. Mich. 2014) ("Home Depot . . . has its principal place of business in Atlanta and is incorporated in Delaware."). It was, therefore, issued to Home Depot in Georgia—not to Kochanek in Arkansas. *See, e.g.*, *Brake v. Hutchinson Technology Inc.*, 774 F.3d 1193, 1197 (8th Cir. 2014) ("[W]hen an ERISA benefit plan is a group employment plan as opposed to a single policy, it is 'issued' to the employer rather than each individual employee") (citing *Hamilton v. Standard Ins. Co.*, 516 F.3d 1069, 1073 (8th Cir. 2008)). Accordingly, the policy is not subject to Rule 101. *See also Burmania v. Hartford*, No. 1:12-CV-1244, 2013 WL 6512951, at *3–4 (W.D. Mich. Dec. 12, 2013). Further, the policy itself has a choice-of-law provision that selects Georgia and federal law to govern its terms, and such provisions "should be

followed, if not unreasonable or fundamentally unfair." *Brake*, 774 F.3d at 1197 (declining to apply a South Dakota regulation barring discretionary clauses when the plan at issue adopted a Minnesota choice-of-law provision). Finally, the policy was issued on November 20, 2012, and became effective on January 1, 2013, preceding Rule 101's effective date of March 1, 2013. *See Owens*, 184 F. Supp. 3d at 584.

Finally, Kochanek asserts that *de novo* review should apply because additional discovery will show that Aetna has made prior inconsistent claims decisions. This argument is rejected because she has not offered anything other than speculation that additional discovery will show any inconsistent decisions, and her request to supplement the record and to conduct additional discovery has been already been denied [Doc. No. 13]. *See Brown v. Seitz Foods*, 140 F.3d 1198, 1200 (8th Cir. 1998) ("Such additional evidence gathering is ruled out on deferential review, and discouraged on *de novo* review to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.") (internal quotations omitted).

Because an abuse of discretion standard applies in this appeal, the administrator's decision will be upheld if it is reasonable—that is, if it is supported by substantial evidence. *King v. Hartford Life & Accident Life Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005). Substantial evidence is less than a preponderance of the evidence, but "more than a scintilla." *House v. Paul Revere Life Ins. Co.*, 241 F.3d 1045, 1048 (8th Cir. 2001). The relevant inquiry is not whether a reasonable person *would have* reached the same decision as the plan

administrator, but rather, given the evidence in the record, whether a reasonable person *could have* reached a similar decision. *Ferrari v. Teacher's Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002).

B. Analysis

*1. Home Depot is an Improper Defendant*

Home Depot is dismissed from this appeal because Kochanek concedes that it is an improper defendant. Pl. Br. at 3, Doc. No. 18; *see Brown v. J.B. Hunt Transport Services, Inc.*, 586 F.3d 1079, 1088 (8th Cir. 2009) (holding that dismissal of a plan administrator is proper because the insurer, and not the administrator, must pay benefits to the insured).

*2. Substantial Evidence Supports the Termination of Kochanek's Benefits*

Aetna appears to base its termination of Kochanek's STD benefits primarily on Dr. Coppola's July 28, 2014, statement and the fact that Dr. Bryant failed to support his opinion that Kochanek was unable to return to work with relevant medical records. *See* AR at 675, 686–87, 689–90. In his statement, Dr. Coppola released Kochanek to work as of July 3, 2014, and advised that she is able to do "[h]eavy work activity" without any restrictions or limitations. *Id.* at 675, 687. Dr. Coppola's statement was accompanied by detailed medical records that describe evaluations of and procedures performed on Kochanek over the preceding months. *Id.* at 678–85. While Dr. Bryant, Kochanek's primary care physician, did not release her to work at least until September 22, 2014, he failed to include any medical records that support his conclusion. *Id.* at 689. Moreover, Dr. Bryant could not identify any

9

specific restrictions or limitations that would prevent Kochanek from returning to work. *Id.*

Aetna affirmed its denial of Kochanek's claim in its internal appeals process. *Id.* at 596–97. Kochanek's claim was reviewed by Dr. Edward Klotz, a physician specializing in internal medicine. *See id.* at 836. After reviewing the records submitted by Dr. Bryant and Dr. Coppola, Dr. Klotz found no functional impairment. *Id.* at 648–52. He opined that Kochanek no longer had an enlarged spleen, based on the repeat CT scan in June 2014, and that there were no abnormal physical, imaging, or laboratory findings that support a finding of a significant impairment. *Id.* at 640–41. This conclusion is further supported by a follow-up conversation between Dr. Klotz and Dr. Bryant, in which Klotz reported that Bryant still could not identify any particular restrictions or limitations on Kochanek's daily activities caused by her medical conditions. *Id.*

This was a proper basis upon which to terminate Kochanek's benefits. Not only did one of her own treating physicians clear her to return to work as early as July 3, 2014, the only medical opinion favorable to Kochanek's claim lacked any supporting medical documentation and could not identify any specific restrictions or limitations on her daily activities. Indeed, there is simply no evidence showing that Kochanek was disabled and entitled to benefits past August 5, 2014, notwithstanding her self-reported complaints. Kochanek bears the burden of proving that she remained entitled to STD benefits under the terms of the plan, and Aetna properly denied her claim in light of an objective lack of evidence that she was disabled. *See McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921,

925 (8th Cir. 2004) (citing *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002)). Because Aetna's decision to terminate benefits "is supported by a reasonable explanation, it [will] not be disturbed." *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009).

*3. Kochanek's Arguments Are Unpersuasive*

Kochanek's arguments on appeal are all unpersuasive. First, she argues that Aetna lacks the power to make any claims decisions. Again, as discussed above, this argument is plainly refuted by the record, which clearly shows that Aetna has full authority to act as a claims administrator and to determine whether and to what extent a claimant is entitled to STD benefits. *See, e.g.*, AR at 79, 471, 499.

Second, Kochanek attempts to shift the burden of proof on to Aetna to show that she was able to perform her job. She states that "there is no evidence in this record that Plaintiff can safely perform the material duties of her job and make at least 80% of her pre-disability earnings. . . ." Pl. Br. at 5. This argument misunderstands the terms of the plan, which places the burden on insureds to substantiate their claims for benefits and submit the necessary proof to Aetna for evaluation. *See, e.g.*, AR at 101, 390. Moreover, the plan requires that Kochanek periodically provide proof of any continued disability, and Aetna could reasonably condition STD benefits on receiving periodic medical records showing that Kochanek was still disabled. *See Dillard's Inc. v. Liberty Life Assurance Co. of Boston*, 456 F.3d 894, 897, 900 (8th Cir. 2006).

Third, Kochanek's argument that the plan requires no objective evidence to support a disability claim is unsupported by the record, and her reliance on *House v. Paul Revere Life Ins.* is misplaced. 241 F.3d at 1045. Kochanek cites to *House* for the proposition that it is improper for the plan to require objective medical evidence to support a claim for disability benefits. In *House*, however, the Eighth Circuit considered a narrow circumstance in which the relevant plan documents only reserved the right for the plan administrator to demand "medical exams or written proof of financial loss," which would then be paid by the administrator. *Id.* at 1048. Because the plan itself did not reserve the right to demand objective medical evidence to support a claim, *House* held that it was inappropriate for the administrator to require further documentation of the claimant's disability. *Id.*; *see also Pralutksy v. Metro. Life Ins. Co.*, 435 F.3d 833, 839 (8th Cir. 2006) ("*House* does not state a universal rule that an administrator is precluded from insisting on objective medical evidence when it is appropriate under the terms of a plan and the circumstances of the case."). Here, the plan documents are not limited like those in *House*, and they require a claimant to provide documentation and objective medical evidence to support a disability claim. *See, e.g.*, AR at 101, 390.

Fourth, Kochanek's argument that Aetna failed to consider the side effects of her medication is unpersuasive. There does not appear to be any evidence in the record that Kochanek complained to her doctors about her medications or that any of her treating physicians found that she could not perform her job on account of them. The first mention

12

of any mental capacity issues appears to be her self-reported complaints in her letter appealing her denial of benefits within Aetna. AR at 654. Aetna, however, could not have abused its discretion by not considering the side effects Kochanek experienced from her medications because this information was not properly raised in the claims review process. *See, e.g.*, *Daigle v. Hartford Life & Accident Ins. Co.*, No. 1:10-CV-00011 BSM, 2011 WL 861176, at *8 (E.D. Ark. Mar. 11, 2011) ("[T]he record does not contain evidence of the specific side effects of Daigle's pain medication; therefore, Hartford's employability analysis was not arbitrary for failing to explicitly consider possible side effects."), *aff'd*, 452 F. App'x 689 (8th Cir. 2011). Further, her citations to internet websites that discuss the possible side effects of her medications must be disregarded as these are not part of the administrative record. *Keil v. Life Ins. Co. of N. Am.*, No. 07-CV-11816, 2008 WL 2478327, at *5 (E.D. Mich. June 17, 2008). Finally, it appears that Aetna did review her medications, as Dr. Klotz's referenced her medications in his reports. AR at 640, 650–51. Aetna also referred to them in its letter denying Kochanek's appeal. *See Downey v. Hartford Life Grp. Ins. Co.*, 752 F. Supp. 2d 1083, 1090–91 (W.D. Mo. 2010).

Fifth, the mere fact that Aetna initially approved Kochanek's claims does not mean that it was obligated to continue paying benefits to her. Again, not only is it proper for a insurer to condition the payment of benefits on receiving periodic proof of her continued disability, *Dillard's*, 456 F.3d at 900, but it appears that Aetna only granted benefits on a temporary basis while Kochanek was awaiting further diagnostic testing. *See Kecsco v.*

13

*Meredith Corp.*, 480 F.3d 849, 854 (8th Cir. 2007). Aetna repeatedly warned Kochanek that after this additional testing, she would need to provide Aetna with objective evidence to support her disability claim. When she did not provide this evidence by Aetna's deadline, it properly terminated her STD benefits. *See Atkins v. Prudential Ins. Co.*, 404 F. App'x 82, 86 (8th Cir. 2010); *Dillard's*, 456 F.3d at 900.

Finally, Aetna was not required to have Kochanek's file evaluated by an independent doctor before denying her STD claim. Because the plan does not impose such a requirement, Aetna need not conduct an independent assessment before denying a claim. *See Daigle*, 452 F. App'x at 689–90 ("Contrary to Daigle's assertions on appeal, Hartford was not required to conduct an independent medical examination."). In any event, Dr. Klotz conducted a full review of Kochanek's file, and she fails to identify why his review was insufficient.

### III. CONCLUSION

For the foregoing reasons, judgment is entered for Aetna and Home Depot, and this case is dismissed with prejudice.

IT IS SO ORDERED this 27th day of August 2018.

_____
UNITED STATES DISTRICT JUDGE